# GEORGE DINO DURKIN *v.* STATE OF MARYLAND

[No. 21, September Term, 1978.]

*Decided February 22, 1979.*

Victoria A. Salner, Assistant Public Defender, with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellant.

*Kathleen M. Sweeney, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Clarence W. Sharp, Assistant Attorney General,* on the brief, for appellee.

ELDRIDGE, J., delivered the opinion of the Court.

We granted certiorari in this criminal case to consider the requirement of Maryland Code (1974), § 9-115 of the Courts and Judicial Proceedings Article, that for a character witness to give evidence based on personal opinion, he must have an "adequate basis for forming an opinion as to another person's character . . . ."

The petitioner, George Dino Durkin, was convicted by a jury in the Circuit Court for Montgomery County (Mitchell, J., presiding) of using a handgun in the commission of a felony and unlawfully transporting a handgun in a motor vehicle, in violation of Code (1957, 1976 Repl. Vol.), Art. 27, §§ 36B (b) and 36B (d). The testimony at Durkin's trial was in sharp dispute.

William Perry and John Sleman, witnesses for the State, testified to the following version of the facts. On October 25, 1975, the defendant Durkin came into the Texaco gasoline station located in Kensington, Maryland, where Sleman was employed. Mr. Sleman rented a U-Haul trailer to the defendant, and in the course of the transaction Durkin inquired if he knew anyone who was interested in helping to move some furniture. Sleman telephoned his friend Perry, who came down to the station and met the defendant. After working for Durkin for the remainder of the day, Perry was paid $50.00 for his efforts.

The defendant and Perry then picked up Sleman and went to Durkin's motel room and proceeded to drink beer and smoke marijuana. Sometime later the defendant "shot up" some cocaine, which he offered to sell to his companions. Perry responded by saying he knew someone who might be interested in buying the drug, whereupon the three drove to a parking lot where Perry had left his car. At that point the defendant drew a gun on Perry and Sleman and demanded and received all of their money, a total of $150.00.

On the other hand, the defendant's account of these events differed in several important respects. The defendant testified that Perry produced a small amount of cocaine in the motel room and sold it to him for $20.00. Perry then offered to sell the defendant more cocaine, whereupon the three men drove off to consummate the sale. When they arrived in the vicinity of the supposed cocaine supplier, Sleman and Perry left the car and returned a short while later with a bag of what was apparently cocaine. The defendant then took the bag without paying for it, told the men to "chalk it up to experience," and drove away.

At the conclusion of the trial, the jury found Durkin not guilty on charges of armed robbery and assault with intent to rob and guilty on the two counts of handgun violations under Art. 27, § 36B. He was sentenced to five years' imprisonment on each count, to be served concurrently.

Durkin took an appeal to the Court of Special Appeals where he argued, *inter alia,* that the trial court erred in refusing to admit into evidence the testimony and personal opinion of a defense witness attacking the character for truthfulness of the State's witness Sleman. The defense witness was Chief of Police Roy A. Burke of the Chevy Chase Village Police Department. Chief Burke testified, under a proffer by the defendant out of the jury's presence, that in his opinion the State's witness Sleman had on one occasion falsely reported a larceny and that, based on the incident, Chief Burke did not believe that Sleman was an honest or truthful person regarding the matter. The State argued that the trial judge properly exercised his discretion in excluding the opinion testimony of Chief Burke, as there was no

"adequate basis" for the evidence as required by § 9-115. The Court of Special Appeals, in an unreported opinion, affirmed the conviction, holding that the trial judge's discretion was "judiciously exercised." *Durkin v. State,* No. 776, September Term, 1977 (decided March 14, 1978). We then granted the defendant's petition for a writ of certiorari.

In this Court, as below, the defendant's position seems to be that once a character witness has formed a personal opinion as to the character for truthfulness of another witness, and that opinion has some basis in the personal experience of the character witness, the testimony, if relevant, is admissible, and the extent or nature of the basis for the opinion goes not to the admissibility but only to the weight of the evidence. The State, on the other hand, maintains that before a witness's opinion as to the truthful character of another witness can be admitted, the character witness must demonstrate an "adequate basis" for his opinion. In this case, the State asserts, the trial judge properly exercised his discretion in excluding the character evidence on the ground that the basis for the witness's opinion was inadequate. We agree with the State's position on this matter, and we shall affirm.

The issue in this case centers upon § 9-115 of the Courts and Judicial Proceedings Article. It provides:

> "Where character evidence is otherwise relevant to the proceeding, no person offered as a character witness who has an adequate basis for forming an opinion as to another person's character shall hereafter be excluded from giving evidence based on personal opinion to prove character, either in person or by deposition, in any suit, action or proceeding, civil or criminal, in any court or before any judge, or jury of the State."

The purpose of this provision was to modify the rule, previously followed in Maryland and in a majority of other states, which did not allow a character witness to testify concerning his own personal opinion of the truthfulness of another witness. Instead, the truthfulness of a witness could

only be impugned by a character witness by asking the latter if he knew the general reputation in the community for veracity of the witness under attack. For discussions of the rule, and its history, *see Taylor v. State,* 278 Md. 150, 155, 360 A. 2d 430 (1976); *Comi v. State,* 202 Md. 472, 478, 97 A. 2d 129, *cert. denied,* 346 U. S. 898, 74 S. Ct. 223, 98 L. Ed. 399 (1953); *Berger v. State,* 179 Md. 410, 412-413, 20 A. 2d 146 (1941); 7 Wigmore, *Evidence* §§ 1980-1985 (Chadbourn rev. 1978); McCormick, *Evidence* § 44 (2d ed. 1972). Against this background, the Legislature enacted what is now § 9-115 of the Courts and Judicial Proceedings Article, Chap. 760 of the Acts of 1971. The legislative purpose of the statute, as set forth in its title, was to change the prior rule and to permit "a character witness . . . to give evidence to prove character based on personal opinion."

Turning to the instant case, the defendant sought to impeach the testimony of the State's witness, Sleman, by having Chief of Police Burke testify as to his personal opinion regarding the character of Sleman for truthfulness. Out of the presence of the jury, the defendant proffered the following testimony by Chief Burke:

"Q. [By Defense Attorney] As a result of your duties at Chevy Chase Village Police Department, have you come to know Jack or John Sleman?

"A. Correct.

"Q. Does he live within the jurisdiction of your police department?

"A. He does.

"Q. Chief Burke, did there come occasion during your duties there that you had cause to investigate a matter that was reported to you by Mr. Sleman?

"A. It was.

"Q. What was the nature of that report to you?

"A. Mr. Sleman reported a larceny to us in reference to some property taken from the premises.

"Q. The general nature of that property was what?

"A. It was supposed to be automobile tools, and if I recall, it was some type of electrical tools for taking tires off. I don't remember the technical name, but it was tools.

"Q. Did you and your police department cause an investigation to be made into that?

"A. I did.

"Q. Now, I don't know if the Court feels it would be relevant as to what was the extent of his investigation. I would ask at this time as to whether or not he formed an opinion as to the honesty and truthfulness of Mr. Sleman based upon that investigation.

\* \* \*

"Q. As a result of that investigation, did you form an opinion as to the honesty and truthfulness of Mr. Sleman?

"A. Regarding the submission of the report, yes.

"Q. As a result of that you formed an opinion as to Mr. Sleman's truthfulness and honesty, did you not, personal opinion?

"A. Regarding that, yes.

"Q. And what is that opinion?

"A. That it was not a valid complaint.

"Q. And, therefore, you felt he was not an honest or truthful person?

"A. Regarding that matter, no.

"Q. And your opinion is based upon that incident; is that what you are saying?

"A. That's correct.

"[By Defense Attorney]: That is the extent of that, Your Honor."

The prosecuting attorney then cross-examined Chief Burke as follows:

"Q. Could you tell us — I would like to know something about the report.

"A. The report, the complaint was made by Mr. Sleman that there were several items, large items, and a tool box that was missing out of the garage portion of his house. He stated that they were wrapped, as I recall, in some type of greasy rags, and there was only several people who had knowledge that they were there, he being one of them, and his father being the other. After the investigation of where he said these items were, he felt that — and I can't recall where he was employed, but it was a gas station in Bethesda, that they had been removed by somebody he was employed with. However, he could not say who.

"Q. Did you ever find these tools?

"A. We never found the tools nor the location where they were stored.

"Q. What makes you think his story wasn't true?

"A. Based upon what he had told us in the complaint, from where he said they were concealed, and the security of the tools that he said he took, somebody would have to have knowledge, being his father —

"Q. Or himself?

"A. Or himself. And his father did not take the tools, which we discovered.

"Q. Or a clever crook?

"A. If that was the case, that is true, if the crook wanted strictly tools, but there were far more valuable items located in the same proximity which were not disturbed.

"Q. It is an open investigation?

"A. It is closed at this point.

"Q. Not solved, however?

"A. That is correct."

The trial judge concluded that it was unclear from Chief Burke's testimony whether Sleman had filed a false report with the police department. Consequently, he refused to

admit the proffered testimony on the ground that Chief Burke did not possess an adequate basis for his opinion.

As previously mentioned, in arguing that the above-quoted testimony was admissible, the defendant's position seems to be that once a character witness has formed a relevant opinion regarding the veracity of another witness, and that opinion has some basis in the personal experience of the character witness, the testimony is admissible, and the sufficiency of the basis for the opinion goes not to the admissibility but only to the weight of the evidence.

We do not think that the Legislature intended to attribute such a narrow meaning to the words "adequate basis" as advanced by the defendant. The language of § 9-115 itself refutes this contention, providing that "no person offered as a character witness *who has an adequate basis* for forming an opinion as to another person's character shall hereafter be *excluded* from giving evidence based on personal opinion to prove character." (Emphasis supplied.) The plain language of the statute shows that the adequacy of the basis relates to whether the personal opinion shall be "excluded," and not merely to the weight of the personal opinion testimony. Implicit in the language is the requirement that the trial judge determine that the character witness have a proper foundation for his opinion before it is admitted into evidence.

Furthermore, the legislative history of § 9-115 demonstrates the General Assembly's interest in the adequacy of the basis for personal opinion character testimony. Section 9-115, being Ch. 760 of the Acts of 1971, was first introduced as Senate Bill 306. As introduced, the bill provided:

> "No person offered as a character witness shall hereafter be excluded from giving evidence based on personal opinion to prove character, either in person or by deposition, in any suit, action or proceeding, civil or criminal, in any court or before any judge, jury, magistrate or justice of the peace of this State."

The first of two amendments to the bill was initiated on the floor of the Senate and added the opening phrase: "Where

character evidence is otherwise relevant to the proceeding, no . . . ," 1971 Senate Journal, p. 689. The final amendment was recommended by the Judiciary Committee of the House of Delegates, which inserted the words "who has an adequate basis for forming an opinion as to another person's character" after the word "witness" in the original text, 1971 House Journal, pp. 2015-2016. The amendment was adopted by the full House, *id.* at 2016. Without further change, Senate Bill 306 was enacted into law as Ch. 760 of the Acts of 1971, and later codified as § 9-115 of the Courts and Judicial Proceedings Article. The two amendments reveal the Legislature's concern that personal opinion character testimony might be too freely admitted under the original language of Senate Bill 306, and its desire to make it clear that admissibility should be limited to the situation where the opinion was relevant and had a sufficient basis.

In sum, it is clear from the language and legislative history of § 9-115 that the extent of the basis for the personal opinion character testimony relates to admissibility, and not just to the weight to be given the testimony by the trier of fact. Consequently, like other similar requirements for the admissibility of evidence, the trial judge has the threshhold function of evaluating the circumstances and making a determination that the personal opinion of the character witness is relevant and has an adequate basis. And, as is the case with relevancy or similar evidentiary matters, much deference will be paid to his determination, and it will be overturned on appeal only if there is a clear abuse of discretion. *Cf. City of Baltimore v. Zell,* 279 Md. 23, 28, 367 A. 2d 14 (1977); *I. W. Berman Prop. v. Porter Bros.,* 276 Md. 1, 14, 344 A. 2d 65 (1975); *Corbi v. Hendrickson,* 268 Md. 459, 468, 302 A. 2d 194 (1973); *Ottenberg v. Ryan & Riley Co.,* 130 Md. 38, 43-44, 99 A. 984 (1917).

In the instant case, the trial judge did not clearly abuse his discretion in determining that there was not an adequate basis for the Police Chief's opinion concerning Sleman's character for truthfulness. Chief Burke's knowledge of Sleman's character appeared to be the result of a brief and limited encounter with the witness. As a consequence of this

meeting, the Chief speculated that the witness submitted a complaint to the police department falsely reporting a crime. Moreover, from a reading of Chief Burke's testimony, it is not at all clear that Sleman did falsely report a crime. This was the extent of Burke's knowledge regarding the character of Sleman for veracity. The trial judge, who heard Burke testify and who justifiably concluded that the police report was not shown to be false, acted within his discretion in excluding the proffered evidence.

An almost identical situation was involved in *People v. Mendoza,* 37 Cal.App.3d 717, 112 Cal. Rptr. 565 (1974). There, the criminal defendant sought to introduce into evidence the character opinion of a police officer in order to impeach the testimony of a prosecution witness. In his proffered testimony, the police officer stated that the prosecution witness had previously submitted a false police report. The California Court of Appeal upheld the trial judge's refusal to admit the officer's opinion on the ground that it lacked a sufficient foundation. The testimony was rejected even though Cal. Evidence Code, § 1100 (West), admits personal opinion character testimony without an express requirement that the impeaching witness have an adequate basis for his opinion.

Since the trial judge in the present case did not abuse his discretion in excluding the proffered character testimony, we affirm the decision of the Court of Special Appeals.[1]

*Judgment affirmed.*
*Costs to be paid by petitioner.*

---

1. As an alternative ground for upholding the Court of Special Appeals' affirmance of the trial court's decision, the State relies upon our recent decision in Taylor v. State, 278 Md. 150, 360 A. 2d 430 (1976). There we held that a criminal charge, which did not lead to a conviction, cannot be used as a basis for cross-examining a criminal defendant's character witness. In the instant case, the witness was accused by Chief Burke of knowingly filing a false police report, which is a crime under Maryland Code (1957, 1976 Repl. Vol.), Art. 27, § 150. Consequently, the State contends that this testimony amounts to an accusation by the local police department of a crime, but that no conviction has resulted. Therefore, the State argues that the holding in *Taylor* should be extended to cover this situation. In light of our holding in this case, we need not, and do not, intimate any opinion regarding the State's alternate argument.