468 A.2d 1040

**Lee Thomas BARNES**

v.

**STATE of Maryland.**

**No. 15, Sept. Term, 1983.**

Court of Special Appeals of Maryland.

Jan. 5, 1984.

Certiorari Denied May 28, 1984.

George E. Burns, Jr., Asst. Public Defender, with whom was Alan H. Murrell, Public Defender on the brief, for appellant.

Valerie V. Cloutier, Asst. Atty. Gen., with whom were Stephen H. Sachs, Atty. Gen., James L. Sherbin, State's Atty. for Garrett County, Thomas E. Hickman, State's Atty. for Carroll County, Jerry F. Barnes and James Brewer, Asst. State's Attys. for Carroll County on the brief, for appellee.

Argued before MOYLAN, LOWE and GARRITY, JJ.

GARRITY, Judge.

The appellant, Lee Thomas Barnes, was convicted at a jury trial in the Circuit Court for Garrett County of arson, breaking and entering, and malicious destruction. He was

sentenced to a total of 15 years imprisonment. On appeal, he contends that several errors occurred during the course of his trial. We shall first address his contention that the evidence presented by the State was insufficient to sustain his convictions, because if the appellant is correct in this allegation, we would be compelled to reverse the convictions without remand for a new trial, and we would not need to address the additional contentions. *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); *Dean v. State,* 46 Md.App. 536, 537, 420 A.2d 288 (1980).

## I. *Sufficiency of Evidence*

At the appellant's trial, the State presented the testimony of Charles W. Fritz, the Chief of Police and Asst. Fire Chief of New Windsor, Maryland. Chief Fritz stated that on the evening of July 14, 1980, during his routine patrol of New Windsor, he inspected the quonset hut used as a warehouse of the Brethren Service Center. At about 6:30 p.m. and at 11:30 p.m., according to the witness, the condition of the warehouse was "normal."

The police chief further testified that at approximately 6:15 p.m. to 6:30 p.m. he saw the appellant and several other people socializing outside the appellant's home, which was 500 feet from the warehouse. After Chief Fritz went off-duty and returned home, he received a message over his monitor alerting him to a fire at the Brethren Service Center. The time was approximately 1:45 a.m. Chief Fritz testified that he responded to the fire alarm within a few minutes and found the warehouse engulfed in flames.

Chief Fritz told the jury that while he was directing the firefighters, he noticed the appellant and several other civilians standing nearby, about 8 to 10 feet from the fire engine. According to the witness, the whole group "seemed to be having a joke out of the thing, like they were laughing and talking. . . . like it was more of a comedian show for them." Chief Fritz added that his firefighters had difficulties battling the blaze, which briefly was out of control, and took 14 hours or more to extinguish. When asked to de-

scribe the extent of the damage, the witness said that the front of the warehouse was "totally destroyed," and that the rest of the structure and its contents were "damaged considerable."

A representative of the church which operated the warehouse, David Bubel, testified that the building had been used to store and process clothing gathered by church groups and relief organizations to be shipped overseas. Bubel stated that on the night of the fire, the warehouse contained over 6,000 bales of clothing, with each bale weighing approximately 90 pounds. The warehouse also contained 20 tons of soap and various machinery. The witness testified that the warehouse was clean and well-maintained; that no loose clothing or rags were kept on the floor, and that the electrical wires were housed in metal conduits. Over objection, the witness was allowed to testify that none of the warehouse workers smoked. Bubel estimated the value of the clothing in the building at about a million dollars.

Additional evidence for the prosecution was presented by two fire investigators from the State Fire Marshall's Office. J. Elwood Kauffman testified that he examined the remains of the warehouse and determined that the fire could not have been caused by an electrical problem, or by cigarette smoking, spontaneous combustion or chemical reaction. The expert witness opined that the warehouse was damaged by an incendiary fire which had been deliberately set near one of the building's conveyors.

Charles Cronauer, the second investigator, testified that he was certain that the fire had been deliberately set because there was no heat source, electrical or chemical, under the warehouse conveyor where the fire began. He opined that the fire had to have been caused by someone piling loose clothing under the conveyor and igniting it with a match or a lighter.

The State also called as a witness, Levine J. Clark, a neighbor of the appellant. The witness recalled that within two or three months after the warehouse fire, he was

talking with the appellant who said, "I burnt the place down."

Pamela Joy Wilson testified for the State and said that in March or April of 1981, she conversed with the appellant. She related to the jury that in the course of the conversation, in response to her asking the appellant whether he had anything to do with the Brethren Service Center fire, he replied, "Yes." On cross-examination, Wilson admitted that she had discussed the fire investigation with Fire Marshall Frank Rauschenberg, and had talked about a reward of approximately $165.00.

Donald Mullinex testified that during the evening of July 14, 1980, he and two other young men spent several hours at the appellant's apartment talking, playing cards, drinking beer and eating crabs. He stated that late in the evening the appellant and the other men left the appellant's apartment. Mullinex fell asleep, to be awakened later by the sound of fire sirens. The appellant later returned and told Mullinex that he "just hoped the fire marshall didn't come over that night."

Charles W. Gardner testified that he was also with the appellant during the evening of July 14, 1980. He recalled that the appellant discussed breaking into the Brethren Service Center to steal blankets. According to the witness, the appellant said that it was possible to break into the quonset hut by lifting the "tin side" of the building. The appellant also expressed displeasure that the clothing in the warehouse was being sent overseas while there were needy people in this country.

Gardner further testified that he declined to get involved in the planned break-in, but that on July 15, 1980, he spoke with the appellant and asked him if he had burned down the warehouse. The appellant later replied, "I did a hell of a good job on it, didn't I?"

The appellant contends on appeal that the testimony of witnesses Gardner, Wilson, and Clark was unworthy of belief by the jury because these witnesses had prior criminal

records. He asserts that his conviction should be reversed because in the absence of credible testimony, the State failed to present evidence from which the jury could fairly be convinced, beyond a reasonable doubt, of the appellant's guilt. *Metz v. State,* 9 Md.App. 15, 23, 262 A.2d 331 (1970).

The record reveals that the defense questioned the credibility of several of the State's witnesses, using their criminal records. The defense did not, however, successfully challenge the admissibility of the testimony given by these witnesses. Once testimony has been ruled admissible in a trial by jury, it is the province of the jury as factfinder, not the trial judge or an appellate court, to weigh the credibility of the testimony and determine the issue of guilt or innocence. This Court will affirm a determination of guilt if, after viewing the evidence in the light most favorable to the State, we determine that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

In the present case, we will not assess the veracity of the witnesses; rather, we must accept the jury's determination that they were credible. We hold that the evidence presented was sufficient to sustain the appellant's conviction.

## II. *Impeachment Testimony*

The appellant's mother, Mildred Barnes, testified for the defense. She stated that she had previously conversed with two of the State's witnesses, Charles Gardner and Pamela Wilson. Regarding her conversation with Gardner, Mrs. Barnes said that he told her that he did not believe that the appellant would have committed the arson, and that the State's witness, Levine Clark, was a drunk who would say anything. Mrs. Barnes further testified that Pamela Wilson had told her prior to the trial that she was ashamed of herself for serving as a witness against the appellant.

In rebuttal, State's witness Gardner admitted having discussed the case with Mrs. Barnes, but he did not believe that his conversation with her addressed the issue of the appellant's criminal agency. Miss Wilson rebutted Mrs. Barnes' testimony by completely denying that she had ever participated in such a conversation with Mrs. Barnes.

The State also called Chief Fritz as a rebuttal witness. The witness testified at length concerning his dealings with Mrs. Barnes prior to the trial. He stated that he had known Mrs. Barnes well for the previous two years, and had been "faintly acquainted" with her for several years earlier. During the two years immediately preceding the trial, Chief Fritz had talked with Mrs. Barnes at her house three or four times. On those occasions, the officer sought to confirm information which he had already obtained elsewhere. According to Chief Fritz, all that he required from Mrs. Barnes was a verification of the specific addresses of other people and confirmation of the "good lead" that he had on matters unrelated to the present case. Viewed in context, on the basis of this personal contact with Mrs. Barnes, Chief Fritz was permitted to testify over defense objection that he did not believe that Mrs. Barnes was a truthful person.

On appeal, the appellant stages a two-pronged attack on the trial court's admission of Chief Fritz's opinion testimony.[1] First, the appellant contends that the trial court should not have admitted Chief Fritz's testimony because he lacked "an adequate basis for forming an opinion as to another person's character", as is required pursuant to Cts. & Jud. Proc.Code Ann., § 9–115 in order for character testimony to be admitted. Second, the appellant asserts that the trial judge erred in overruling the objection to the testimony on the judge's express grounds that "I think the objection goes rather to its weight than its admissibility." The appellant contends that the judge's statement indicates that he erred in applying the wrong legal standard, because under Mary-

---

1. No question is raised as to the materiality of the issue of general character, and we do not decide the issue.

land law, "the extent of the basis for the personal opinion character testimony relates to admissibility and not to the weight to be given the testimony." *Durkin v. State,* 284 Md. 445, 453, 397 A.2d 600 (1979).

The appellant's two contentions can be concisely answered. The starting point for our review is Cts. & Jud.Proc. Code Ann., § 9–115. This section permits a witness to express a personal opinion regarding the general character for truthfulness of another witness provided that the personal opinion is relevant and has an adequate basis. The full text of the statute provides:

> Where character evidence is otherwise relevant to the proceeding, no person offered as a character witness who has had an adequate basis for forming an opinion as to another person's character shall hereafter be excluded from giving evidence based on personal opinion to prove character, either in person or by deposition, in any suit, action or proceeding, civil or criminal, in any court or before any judge, or jury of the State.

The purpose of this provision was summarized by Judge Cole, speaking for the Court of Appeals in *Kelley v. State,* 288 Md. 298, 302, 418 A.2d 217 (1980):

> The legislature's purpose in enacting this statute was to abrogate the common law rule which limited a character witness' testimony to the defendant's reputation among others. The statute permits the admission of a broad range of testimony which may aid the jury in assessing the credibility of a witness; however, such testimony must not be used as a subterfuge to indirectly convey evidence which is otherwise inadmissible. (citation omitted).

In *Kelley, supra,* the Court of Appeals applied Section 9–115 and held that a trial court erred in admitting character evidence where the only basis for one witness's testimony against the credibility of another witness was a two hour interview. The Court concluded that this single interview did not provide an adequate basis for the admission of the veracity testimony, and that the trial judge abused his

discretion in admitting the evidence. *Kelley, supra* at 304, 418 A.2d 217. Similarly, in *Durkin, supra* 284 Md. at 453–454, 397 A.2d 600, the Court of Appeals held that a "brief and limited encounter with the witness" could not provide a character witness with an adequate basis from which to form an admissible opinion as to the former witness' credibility.

■ In the instant case, we are presented with facts distinct from those in *Durkin* and *Kelley*. In this case, the character witness had repeatedly interviewed Mrs. Barnes over the course of many months. Furthermore, prior to the period of time in which these interviews were conducted, Chief Fritz had been acquainted with the witness. The significant contact with Mrs. Barnes provided Chief Fritz with an adequate basis from which he could testify as to her credibility within the purview of Section 9–115. The trial judge did not abuse his discretion in admitting the character evidence following the presentation of the proper foundation.

■ We additionally hold that the trial judge did not apply an incorrect legal standard when he overruled the appellant's objection to the admission of character testimony. The Court of Appeals in *Durkin, supra,* was specifically addressing the "threshold function" of a judge's evaluation of the basis of a character witness' opinion, when the Court held that this basis "relates to admissibility, and not just to the weight to be given the testimony." The record in the present case indicates that the trial judge followed this standard when he evaluated the proffered testimony of Chief Fritz. After this evaluation was completed, and the evidence was ruled admissible, then the trial judge stated that the appellant's challenge to the admission of the evidence would be overruled, and that the jury would be allowed to assess the weight of the witness' testimony.

The correctness of the trial judge's ruling on the admission of the evidence was positively reinforced during the defense's cross-examination of Chief Fritz. In response to

questions by appellant's counsel, Chief Fritz testified that Mrs. Barnes told him that she did not know the "addresses and information on a child that she had at her place at that time and information on the father of that child. . . ." The investigators subsequently established that Mrs. Barnes had in fact known the information, according to Chief Fritz.

### III. *"Habit" Evidence*

■ During the testimony of David Bubel, it was established that a five man crew had worked at the warehouse on the day before the fire. Bubel was their supervisor, and he testified that he had known each of the workers for at least two years prior to the fire. Over defense objection, Bubel further testified that he was familiar with the smoking habits of the men who were both his workers and fellow church members. He was permitted to testify that none of the men smoked.

On appeal, the appellant contends that the trial court erred in admitting evidence of the workers' smoking habits because Bubel failed to provide a basis for his conclusion that the workers never smoked. The appellant asserts that at most Bubel could only state that he had not seen them smoke while working or at church.

■ Maryland law vests wide discretion in trial judges regarding the admission of evidence, and permits the admission of testimony as to a person's habitual response to a repeated specific situation. In the present case, the witness was not requested to testify beyond the scope of his personal knowledge of his workers' usual practice of non-smoking during work hours. Bubel's testimony was very relevant to the issue of whether the warehouse fire could have been started accidentally. The evidence was probative for showing that the workers acted in accordance with their prior conduct and habits on the day of the fire. *Leaman v. League Lumber Co.,* 239 Md. 258, 262–63, 211 A.2d 296 (1965).

Bubel's testimony as to his workers' non-smoking was consistent with the latter testimony of the fire investigators

who opined that careless smoking could not have been a factor in causing the fire. We conclude that the trial court did not err in admitting this relevant evidence.

### IV.  *Assistance of Counsel*

■ Appellant avers that trial counsel failed to provide the appellant with "genuine and effective representation". Specifically, it is asserted that trial counsel neglected to obtain transcripts of the appellant's previous trial in which there had been a hung jury, and failed to investigate the case adequately.

The issue is not properly before this Court. The Court of Appeals, and this Court, have repeatedly held that contentions of inadequate assistance of counsel are not to be raised on direct appeal, but by way of a petition for post-conviction relief pursuant to Md.Ann.Code, Art. 27, § 645 A. *Johnson v. State,* 292 Md. 405, 434, 435, 439 A.2d 542 (1982); *White v. State,* 17 Md.App. 58, 64–65, 299 A.2d 873 (1973).

### V.  *Closing Argument*

■ In his closing argument to the jury, the Assistant State's Attorney commented on the testimony of Charles Gardner, a convicted arsonist, who testified as to his conversation with the appellant. The prosecutor implied that Gardner's testimony was worthy of belief because the appellant trusted Gardner and "who better to trust, confide in, talk to, than one arsonist to another arsonist." Defense counsel promptly objected to this comment, and the trial judge sustained the objection. The prosecutor then continued his closing argument without further comment on the similarity of Gardner's offense to that for which the appellant was accused. There was no further relief sought at trial by the appellant, and a curative instruction was not given.

■ As set forth by the Court of Appeals in *Wilhelm v. State,* 272 Md. 404, 413, 326 A.2d 707 (1974), counsel may state and discuss during closing argument, "all reasonable and legitimate inferences which may be drawn from the facts in evidence." Comment on such inferences is afforded

a "wide range." In the present case, the prosecutor's remark, made in order to bolster the credibility of Gardner and to explain why the appellant would confide in Gardner, was inferable from the evidence of Gardner's record and his relationship with the appellant. Any possible impropriety in the prosecutor's line of comment was cured when the trial judge sustained the defense counsel's objection. If this remedy was not sufficient, defense counsel could have requested a curative instruction or a mistrial. Additional relief, however, was not requested. We infer, therefore, that defense counsel was satisfied at trial with the sustaining of his objection. As part of trial strategy, counsel may have decided not to request further relief in order to avoid entrenching the issue in the minds of the jurors. In any event, we will not second-guess trial counsel or the trial judge on this issue. We hold that the trial judge did not err.

On appeal, the appellant cites additional allegedly prejudicial remarks made by the prosecutor in closing argument. No objection was made at trial to any of these remarks, and on our review, we determine that none of them was so egregious as to require us to hold that they actually prejudiced the appellant. Md.Rule 1085.

JUDGMENTS AFFIRMED. APPELLANT TO PAY COSTS.