601 A.2d 124

**Bruce Edward VOID a/k/a Bruce Everett Void**

v.

**STATE of Maryland.**

**No. 70, Sept. Term, 1991.**

Court of Appeals of Maryland.

Feb. 11, 1992.

Bradford C. Peabody, Asst. Public Defender (Stephen E. Harris, Public Defender, both on brief), Baltimore, for petitioner.

Kathryn Grill Graeff, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., both on brief), Baltimore, for respondent.

Argued before ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI and ROBERT M. BELL, JJ., and CHARLES E. ORTH, Jr., Judge of the Court of Appeals of Md. (retired), Specially Assigned.

CHARLES E. ORTH, Jr., Judge.

Bruce Edward Void claims that the Circuit Court for Prince George's County erroneously quashed subpoenas served on three witnesses called to testify in his behalf. He bewails that the court, by quashing the subpoenas, also quashed his defense in the criminal cause being prosecuted against him. In any event, a jury, without hearing from those witnesses, convicted him of kidnapping, robbery with a deadly weapon and a smattering of lesser offenses, and the Court of Special Appeals affirmed the judgments entered on those convictions in an unreported opinion. Void brought his lament to our attention in a petition for a writ of certiorari, and we granted it. The sole question presented is whether the trial court erred in quashing the subpoenas.

## I.

The three witnesses subpoenaed were members of the Prince George's County Police Department. Void desired their testimony as to the character of Mark Sherman Steedley, a former member of the Department. Steedley was the State's key witness. He was the victim of the crimes Void was alleged to have committed, and it was highly unlikely that the jury would convict unless it believed that Steedley's testimony was credible. Special counsel for the Police Department filed a pre-trial motion for a protective order. The motion named two of the officers summoned and a

third was added by agreement at the time of the hearing on the motion. The grounds of the motion were (1) that the officers had

no personal knowledge or knowledge of any kind about the facts or circumstances related to the investigation, arrest or prosecution of the defendant, Bruce Edward Void,

and (2)

[t]hat any knowledge of [them] that might be used to discredit the character of other witnesses in this matter, came to them while assigned to the Internal Affairs Division of the Police Department and are protected against discovery as confidential police investigations....

Wherefore, the motion requested, the subpoenas be quashed or in the alternative the testimony of the officers "be strictly limited to personal knowledge about the arrest of Bruce Edward Void." Appended to the motion was an affidavit from each of the two officers named therein. Each officer swore that he had "no personal or professional involvement in the investigation, arrest or prosecution of [Void]" and that he had "no basis of knowledge about the character or truthfulness of [Void] or any other witness except that may have been obtained during a confidential internal investigation (which did not concern the activities of [Void])."

The hearing on the motion was comprised only of argument of counsel for the officers and for Void. The State's Attorney did not participate. Counsel for the officers followed the line of her motion and the affidavits. She added that, in the light of the affidavits,

it would be somewhat burdensome to the department to have these officers on standby or available or whatever to testify in this matter.

Void's counsel, opposing the motion, informed the judge that one of the officers told him that in the officer's opinion Steedley was a perjurer; he had lied on the witness stand under oath. Defense counsel said that he had reason to

believe that the officers would state that, in their opinion, based on their own personal knowledge, Steedley was dishonest and that his reputation in the Police Department was that he was dishonest. Upon query by the judge to the officers' counsel whether the officers had any personal knowledge that Steedley was dishonest, she replied, "I'm not sure that I can speak for them. However, I do not know that that is the case." Defense counsel pointed out that "at least one of the officers I have personally spoke with ... told me in his opinion the State's key witness—." The judge interrupted, "We're not interested in his opinion," but then permitted counsel to repeat that "[h]e told me that he believed [Steedley] to be a perjurer and that he's previously lied on the stand based on information that he observed." The judge's position was that Steedley had not been convicted of perjury and "no one is going to stand up in this court and say that Steedley perjured himself. I'm just not going to permit it.... We can forget that." Defense counsel went on:

> [The officers] will also say that Officer Steedley was dishonest because as he took an oath to enforce the laws of this County, he was simultaneously on an ongoing basis committing drug violations.

The judge declared that he was not going to permit that either because Steedley "was found not guilty." Defense counsel's offer to call the officers to testify at the hearing was refused by the judge, even though defense counsel pointed out:

> Specifically they were all involved in the investigation of Mr. Steedley. They have taken an oath and testified against him as to the matters which I want to bring out.

The judge quashed all three subpoenas.

Before the Court of Special Appeals, Void framed his contention, as he does before us, in terms of error in the quashing of the subpoenas. The intermediate appellate court thought that to frame the contention in those terms "focuses on a secondary consideration, not the primary one." It stated:

The real question, and the one that we shall consider, is whether the police officers, had they been in the courtroom, would have been permitted to offer the evidence proffered by [Void].

The intermediate appellate court recognized that "[i]n [Steedley's] capacity as a witness, ... his truth and veracity were in issue," but, the court observed, Steedley "was not a defendant and did not place his character generally in issue in any way." It seems that the intermediate appellate court did not think that honesty "impacted" on truth and veracity, and it proceeded on the assumption that the officers "had not discussed and apparently had no knowledge of Mark Steedley's reputation for truth and veracity." The intermediate appellate court's conception of Void's position at the hearing was that

[t]he sole basis for [calling the officers] as witnesses was that they had investigated charges of drug violations on the part of Steedley. Their investigation led to the indictment and prosecution of Steedley on charges of violating the laws with respect to controlled dangerous substances ... [and] a jury found him not guilty of those charges.

On the premise that the officers' testimony would not be admissible at Void's trial, the Court of Special Appeals saw no error "on the part of [the trial judge] in refusing to permit such testimony, either through the modality of quashing the subpoenas for the witnesses or otherwise." We do not see the matter in the same way as the officers' counsel presented it, or the trial court considered it or the Court of Special Appeals decided it.

## II.

The Sixth Amendment to the Constitution of the United States designates a number of rights which an accused shall enjoy "[i]n all criminal prosecutions." One of those rights assures that an accused "have compulsory process for obtaining witnesses in his favor...." The clause is made obligatory on the states by the Fourteenth Amendment.

*Washington v. Texas,* 388 U.S. 14, 17–19, 87 S.Ct. 1920, 1922–23, 18 L.Ed.2d 1019 (1967).

Article 21 of the Maryland Declaration of Rights declares a variety of rights to which "every man" is entitled "in all criminal prosecutions." Among them are the rights "to have process for his witnesses," and "to examine the witnesses for and against him on oath."

At the common law, followed in Maryland, "the truthfulness of a witness could only be impugned by a character witness by asking the latter if he knew the general reputation in the community for veracity of the witness under attack." *Durkin v. State,* 284 Md. 445, 448–449, 397 A.2d 600 (1979).

Maryland Code (1973, 1989 Rep.Vol.) § 9–115 of the Courts and Judicial Proceedings Article (CJ), being Chapter 760 of the Acts of 1971, modified the common law rule which did not allow a character witness to testify concerning his own personal opinion of the truthfulness of another witness. It prescribed:

Where character evidence is otherwise relevant to the proceeding, no person offered as a character witness who has an adequate basis for forming an opinion as to another person's character shall hereafter be excluded from giving evidence based on personal opinion to prove character, either in person or by deposition, in any suit, action or proceeding, civil or criminal, in any court or before any judge, or jury of the State.

"The statute permits the admission of a broad range of testimony which may aid the jury in assessing the credibility of a witness...." *Kelley v. State,* 288 Md. 298, 302, 418 A.2d 217 (1980). *See Taylor v. State,* 278 Md. 150, 154–155, 360 A.2d 430 (1976).

Void was entitled at the common law to attempt, through his witnesses, to determine the reputation for truth and veracity of a witness against him. And he was entitled under the statute, subject to its restrictions, to elicit the

personal opinion of his witnesses to prove the character of the witness against him.

### III.

We believe that a fair conclusion can be drawn from the proceedings at the hearing on the motion that the testimony Void sought was directed to the character of Steedley. We are not in accord with the State's notion that Void was merely attempting to introduce evidence of prior bad acts by Steedley under the guise of character evidence. It may be that defense counsel's argument could have been articulated in more specific terms. And perhaps some of the reasons he gave for desiring the witnesses' testimony, and which the judge declared he would not permit, may not have been admissible. But that did not justify precluding Void's examination of the witnesses. The proper time for the judge to determine the admissibility of their testimony was upon their examination.

As we have seen, defense counsel spoke in terms of Steedley lying. Obviously, he hoped to show through the witnesses' testimony that Steedley was an ananias. Counsel also referred repeatedly to Steedley's dishonesty. All of which, he posited, was within the knowledge of the witnesses, who had personal opinions to that effect and knew that such was Steedley's reputation in the community. The trial judge indicated an awareness that defense counsel's argument opposing a quashing of the subpoenas was directed to the character of Steedley. The judge recognized correctly, that a character trait with respect to honesty

> would perhaps impact on credibility.... It would go right back to ... whether or not the person is telling the truth. It impacts on veracity.[1]

---

1. Credibility is a trait of character. Credibility encompasses truthfulness, veracity and honesty. Webster's Third New International Dictionary of the English Language, Unabridged (1981) gives "veracity" as a synonym of "truth," at 2457, and defines "honesty" in terms of "truthfulness," at 1086.

We think, however, that the trial judge jumped the gun. We believe that the quashing of the subpoenas was error. Patently, this error may not be deemed harmless in the circumstances. We recognized in *McCray v. State*, 305 Md. 126, 133, 501 A.2d 856 (1985) that

> trial judges have broad discretion in the conduct of trials in such areas as the reception of evidence....

And we said in *Durkin v. State*, 284 Md. at 453, 397 A.2d 600:

> [L]ike other similar requirements for the admissibility of evidence, the trial judge has the threshold function of evaluating the circumstances and making a determination that the personal opinion of the character witness [and his knowledge of the reputation in the community for credibility of the challenged witness,] is relevant and has an adequate basis. And, as is the case with relevancy or similar evidentiary matters, much deference will be paid to his determination, and it will be overturned on appeal only if there is a clear abuse of discretion.

*See Taylor v. State*, 278 Md. at 154–155, 360 A.2d 430. Here, however, the trial judge did not have a sufficient basis for the exercise of sound discretion. He refused to hear from the subpoenaed witnesses. Their affidavits were of no help; the averment that the witnesses had no knowledge of the facts and circumstances of the investigation, arrest or prosecution of Void was of no consequence. Their lack of such knowledge was neither relevant nor material to a determination of the credibility of Steedley. The bare statement that any personal knowledge of the subpoenaed witnesses that might be used to discredit any witness came to the subpoenaed witnesses in a confidential investigation, did not suffice to justify a refusal to permit Void to examine his witnesses. The judge could winnow out on hearing their testimony what was inadmissible as legitimately protected. We do not perceive how he could properly determine, on what was before him, that none of their testimony relating to the credibility of Steedley was admissible without affording Void an opportunity to examine them under

oath. Certainly, the observation of the witnesses' counsel that "it would be somewhat burdensome to the [police] department to have these officers on standby or available or whatever to testify in this matter" was no good reason to disregard Void's rights by quashing the subpoenas.

The Supreme Court declared in *Taylor v. Illinois,* 484 U.S. 400, 408, 108 S.Ct. 646, 652, 98 L.Ed.2d 798 (1988):

Few rights are more fundamental than that of an accused to present witnesses in his own defense.

The Court explained:

The right to compel a witness' presence in the courtroom could not protect the integrity of the adversary process if it did not embrace the right to have the witness' testimony heard by the trier of fact.

*Id.* at 409, 108 S.Ct. at 652. The Court pointed out in *Pennsylvania v. Ritchie,* 480 U.S. 39, 57, 107 S.Ct. 989, 1002, 94 L.Ed.2d 40 (1987) (footnote omitted) that

[o]ur cases establish, at a minimum, that criminal defendants have the right to the government's assistance in compelling the attendance of favorable witnesses at trial and the right to put before a jury evidence that might influence the determination of guilt.

*See Chambers v. Mississippi,* 410 U.S. 284, 302, 93 S.Ct. 1038, 1049, 35 L.Ed.2d 297 (1973). Of course, in the exercise of the rights, the accused, as is required of the State, must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence.

The short of it is that the trial judge should have heard from the subpoenaed witnesses, either at a pretrial hearing or at the trial out of the presence of the jury. *See Durkin v. State,* 284 Md. at 449, 397 A.2d 600. He could, at that time, determine whether the witnesses had admissible testimony to offer. He erred in short-circuiting the common law and statutory rights of Void by quashing the subpoenas. Void is entitled to a new trial.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THAT COURT WITH DIRECTION TO REMAND IT TO THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY FOR A NEW TRIAL; COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY PRINCE GEORGE'S COUNTY.