677 A.2d 602

**STATE of Maryland**

v.

**Paul Everett BROBERG.**

**No. 22, Sept. Term, 1995.**

Court of Appeals of Maryland.

June 11, 1996.

**548**

Kimberly Smith Ward, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General, on brief), Baltimore, for Petitioner.

Kevin G. Hessler (James Robert Miller, Miller, Steinberg & Hessler, on brief), Rockville, for Respondent.

Russell P. Butler, Camp Springs, for Amicus Curiae, Stephanie Roper Foundation, Mothers Against Drunk Driving (MADD), The National Victim Center, and the Maryland Coalition against Crime.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL and RAKER, JJ.

RAKER, Judge.

We granted certiorari in this case to determine whether "in life" photographs, depicting a homicide victim while the victim was alive, may be displayed to the jury at trial.

## I.

On April 25, 1993, Respondent Paul Everett Broberg was driving along a two-lane road in Frederick County. The posted speed limit was fifty miles per hour. As Broberg drove over the crest of a hill, he struck and killed eleven-year-old Thomas Blank, Jr., who was driving a tractor across the road. At the time of the accident, Broberg's speed was estimated at approximately sixty-four miles per hour. His blood alcohol level was measured at 0.17.

Broberg was indicted in the Circuit Court for Frederick County on thirteen charges, including manslaughter by automobile, homicide by motor vehicle while intoxicated, driving while intoxicated, reckless driving, exceeding the speed limit, speed greater than reasonable and prudent, failure to reduce speed to avoid an accident, and other related offenses.

Broberg was tried before a jury in the Circuit Court for Frederick County in November, 1993. During its opening statement, the State displayed two "in life" photographs of the victim: a sixth-grade school picture, and a photograph of the victim in his little league uniform. Defense counsel objected and moved for a mistrial, arguing that the photographs were irrelevant, and that they could not be shown to the jury until they were introduced in evidence.[1] The trial judge denied the motion.

---

1. Respondent notes this fact in his brief, but he does not cross-appeal the denial of his motion. Before this Court, he does not argue that this was error, nor does he ask the Court for relief on this basis. Although the dissent contends that our decision not to address this point indicates that our treatment of the issues is not "even handed," we do not believe it would be appropriate to address an evidentiary issue that was neither briefed nor argued before this Court. *See* dissenting op. at 568, n. 4.

The State used the photographs a second time during its direct examination of the victim's father, Thomas Blank, Sr. When Mr. Blank was shown the photographs and asked to identify the victim, he wept. Defense counsel again objected and moved for a mistrial, arguing that the photographs were irrelevant in light of the parties' prior stipulation to the victim's identity. The prosecutor, however, disputed the scope of the stipulation, stating "that's not what he stipulated to, your honor, for the record." *See infra* Section IV.B and note 13. The trial judge denied the motion, and the prosecutor displayed the two photographs to the jury.

Broberg was convicted of homicide by motor vehicle while intoxicated, driving while intoxicated, reckless driving, exceeding the speed limit, speed greater than reasonable and prudent, and failure to reduce speed to avoid an accident. He was sentenced to five years imprisonment with all but eighteen months suspended, a fine of $3350 with $1500 suspended, and three years supervised probation.

Broberg noted a timely appeal to the Court of Special Appeals. The intermediate appellate court reversed the judgment in an unreported opinion, concluding that the photographs should have been excluded because they were of minimal probative value and were highly prejudicial. We granted the State's petition for a writ of certiorari to resolve the issue of the admissibility of "in life" photographs in criminal cases.[2]

---

2. The Petition for Writ of Certiorari framed the question presented as:

> Did the Court of Special Appeals err in concluding that the trial court improperly exercised its discretion in allowing the jury to become acquainted with the homicide victim through a display of "in life" photographs of the victim?

Although the dissent interprets the certiorari question to require us *solely* to decide whether "in life" photographs may be used to "humanize" a homicide victim, we do not agree with this narrow interpretation of the issue. *See* dissenting op. at 567–568. While Petitioner argued that "in life" photographs should be admitted for this purpose to vindicate the rights of the victim, Petitioner also argued that the trial court properly exercised its discretion in admitting the photographs, because they were relevant and because their probative value was not

## II.

The State contends that admission of the "in life" photographs was within the trial court's discretion, and therefore that the Court of Special Appeals should not have reversed the trial court's decision. The State also argues that the photographs provided relevant background information to "humanize" the victim, consistent with the purposes of Maryland Code (1957, 1992 Repl.Vol., 1995 Cum.Supp.) § 761 of Article 27.

Respondent argues that the trial court abused its discretion in permitting the State to use the "in life" photographs because he contends that the parties agreed to stipulate to the victim's identity, thereby eliminating the photographs' probative value. The photographs thus served only to inflame the jury, and their probative value was outweighed by their prejudicial effect. Furthermore, Respondent argues that the error in admitting the photographs was not harmless beyond a reasonable doubt. Finally, Respondent argues that neither Article 47 of the Maryland Declaration of Rights nor § 761 of Article 27 creates a right for a homicide victim to be represented in a criminal proceeding by use of an "in life" photograph.[3]

---

outweighed by the potential prejudicial effect. *See* Petition for Writ of Certiorari at 4–5.

**3.** Article 47 of the Maryland Declaration of Rights provides in pertinent part that:

 (a) A victim of crime shall be treated by agents of the State with dignity, respect, and sensitivity during all phases of the criminal justice process.

 (b) In a case originating by indictment or information filed in a circuit court, a victim of crime shall have the right to be informed of the rights established in this Article and, upon request and if practicable, to be notified of, to attend, and to be heard at a criminal justice proceeding, as these rights are implemented and the terms "crime", "criminal justice proceeding", and "victim" are specified by law.

MD. DECL. RTS. art. 47. This provision was ratified in 1994, subsequent to Petitioner's trial. *See* 1994 Md. Laws ch. 102. Prior to its enactment, however, similar provisions were contained in § 761(2) of Article 27, which provides that crime victims and witnesses should "be treated with dignity, respect, courtesy, and sensitivity." Section 761(4) also requires that crime victims should be notified of all court proceedings.

**552**

## III.

### A. *Admissibility of Photographic Evidence*

 This Court has on many occasions considered the admissibility of photographic evidence. *See, e.g., Johnson v. State,* 303 Md. 487, 495 A.2d 1 (1985), *cert. denied,* 474 U.S. 1093, 106 S.Ct. 868, 88 L.Ed.2d 907 (1986); *Cook v. State,* 225 Md. 603, 171 A.2d 460 (1961), *cert. denied,* 368 U.S. 970, 82 S.Ct. 445, 7 L.Ed.2d 398 (1962); *Smith v. State,* 182 Md. 176, 32 A.2d 863 (1943). We conclude that "in life" photographs are subject to the same evidentiary analysis as other types of photographs.

 As we have consistently stated, the general rule regarding admission of photographs is that their prejudicial effect must not substantially outweigh their probative value.[4] *See, e.g., Bedford v. State,* 317 Md. 659, 676, 566 A.2d 111, 119 (1989); *Harris v. State,* 312 Md. 225, 245, 539 A.2d 637, 647 (1988); *Mills v. State,* 310 Md. 33, 43, 527 A.2d 3, 7 (1987), *vacated on other grounds,* 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988). This balancing of probative value against prejudicial effect is committed to the sound discretion of the trial judge. The trial court's decision will not be disturbed unless "plainly arbitrary," *Johnson,* 303 Md. at 502, 495 A.2d at 8, because the trial judge is in the best position to make this assessment. *See, e.g., Bedford,* 317 Md. at 676, 566 A.2d at

---

4. Respondent was tried before the new Maryland Rules of Evidence entered into effect on July 1, 1994. Our analysis, however, would be unchanged under the new rules. As under the common law, the new rules require that photographic evidence be relevant to be admissible. Md. Rule 5–402. The new rules also require that the probative value of photographic evidence must not be substantially outweighed by its unfair prejudicial effect. Md. Rule 5–403. *See also* J. MURPHY, JR., MARYLAND EVIDENCE HANDBOOK § 1102, at Supp. 50 (2d ed. 1993 & 1995 Cum. Supp.).

Furthermore, Rule 5–402 and Rule 5–403 are derived from the corresponding Federal Rules of Evidence. In determining the admissibility of photographic evidence under the Federal Rules, federal courts have applied the same two-part test we have adopted. *See, e.g., United States v. Joe,* 8 F.3d 1488, 1499 (10th Cir.1993), *cert. denied,* 510 U.S. 1184, 114 S.Ct. 1236, 127 L.Ed.2d 579 (1994); *United States v. Grandison,* 780 F.2d 425, 429 & n. 4 (4th Cir.1985).

119; *Mills*, 310 Md. at 43–44, 527 A.2d at 8; *Grandison v. State*, 305 Md. 685, 729, 506 A.2d 580, 602 (1986), *cert. denied*, 479 U.S. 873, 107 S.Ct. 38, 93 L.Ed.2d 174 (1986); *but see Buch v. Hulcher*, 180 Md. 309, 313–14, 23 A.2d 829, 831 (1942).

▮▮▮▮ Photographs must also be relevant to be admissible. J. Murphy, Jr., Maryland Evidence Handbook § 1102, at 578 (2d ed. 1993 & 1995 Cum. Supp.); *see also* 3 Wigmore on Evidence § 792, at 237 (Chadbourn rev. 1981 & 1990 Supp.). We have found crime scene and autopsy photographs of homicide victims relevant to a broad range of issues, including the type of wounds, the attacker's intent, and the modus operandi. *See, e.g., Clarke v. State*, 238 Md. 11, 21–22, 207 A.2d 456, 461–62 (1965). "In life" photographs are often relevant to establish the victim's identity. See Annot., *Homicide: Identification of Victim*, 86 A.L.R.2d 722, 739 (1962). The relevancy determination is also committed to the trial judge's discretion.[5] 5 L. McLain, Maryland Evidence § 403.5, at Supp. 106 (1987 & 1994 Supp.).

▮▮▮▮ In assessing the relevance of photographic evidence, we note that photographs may be relevant and possess probative value even though they often illustrate something that has already been presented in testimony. *Grandison*, 305 Md. at 730, 506 A.2d at 602. As we observed in *Johnson v. State*, "all photographic evidence is in some sense cumulative," 303 Md. at 504, 495 A.2d at 9, and "[a]lthough ... cumulative, it should seldom be excluded for that reason." [6] Murphy, *supra*, § 1102, at 578. The rationale for allowing photographs to be

---

**5.** In addition to these relevancy determinations, photographs must also be authenticated to be admissible. *Bedford v. State*, 317 Md. 659, 676, 566 A.2d 111, 119 (1989). The photographer need not testify provided that someone with personal knowledge verifies that the photograph accurately portrays it subject. 5 L. McLain, Maryland Evidence § 403.5, at 317–18 (1987 & 1994 Cum. Supp.); E. Imwinkelreid, Evidentiary Foundations 75 (3d ed. 1995). *See also* Murphy, *supra*, § 1102, at 578.

**6.** Although the new rules of evidence also authorize the trial judge to exclude evidence if necessary to prevent "needless presentation of cumulative evidence," Md. Rule 5–403, we do not interpret the rule to alter the trial court's discretion to admit photographic evidence.

**554**

used to illustrate verbal testimony is that in some cases "photographs present more clearly than words what the witnesses were attempting to describe[.]" *Reid v. State,* 305 Md. 9, 21, 501 A.2d 436, 442 (1985).[7]

■ We have also noted that photographs do not lack probative value merely because they illustrate a point that is uncontested. *Grandison,* 305 Md. at 730, 506 A.2d at 602. For example, in *Evans v. State,* 333 Md. 660, 637 A.2d 117 (1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 109, 130 L.Ed.2d 56 (1994), we held that autopsy photographs were admissible in a capital sentencing proceeding even though the defendant had stipulated to the facts the photographs were offered to prove. Judge Karwacki, writing for the Court, observed that:

> [A] judge should exercise his or her discretion with caution when ruling on the admissibility of photographic evidence in capital sentencing proceedings. The need for caution, however, in no way circumscribes the judge's evidentiary authority; the admission of photographs into evidence remains soundly committed to the discretion of the trial judge in capital sentencing proceedings.

> Applying this standard to the facts before us, we cannot say that the trial judge abused his discretion in allowing these photographs into evidence. The photographs illustrated the number of shots fired at each victim and the pattern of the victims' gunshot wounds. It is immaterial for this purpose that Evans had stipulated to the cause of death, location of wounds, etc., for "the very purpose of photographic evidence is to clarify and communicate facts to the tribunal more accurately than by mere words."

*Id.* at 693, 637 A.2d at 133 (citations omitted). *Accord Grandison,* 305 Md. at 730, 506 A.2d at 603 ("[T]he particular photographs [are not] inflammatory to the jury solely on the

7. We withdrew our initial opinion in *Reid* and ordered a limited remand on an evidentiary issue unrelated to the photographic evidence. The original *Reid* opinion was attached to our revised opinion in an appendix. The portions of the initial opinion relating to the photographs were incorporated in our revised opinion by reference. 305 Md. at 13, 501 A.2d at 438.

basis that they do not represent any issue in controversy. Further, since the photographs are mere graphic representations of undisputed facts already in evidence, their introduction could not be held to have injured the accused.").

 Although the trial judge possesses broad discretion regarding the admission of photographs, this discretion does not authorize the judge to admit *irrelevant* photographs. For example, in *Buch v. Hulcher*, 180 Md. 309, 23 A.2d 829 (1942), an action for alienation of affections, we suggested that a photograph of "plaintiff's wife closely and affectionately surrounded by her daughter and twin sons, very nice looking children and of tender years" was irrelevant, given that the wife was present in court and testified on behalf of her husband.[8] *Id.* at 313, 23 A.2d at 831. Therefore, in determining the admissibility of any photograph, the trial judge must make a two-part assessment: first, the judge must decide whether the photograph is relevant, and second, the judge must balance its probative value against its prejudicial effect. We will treat the trial judge's findings on these matters with great deference. *See, e.g., Void v. State*, 325 Md. 386, 393, 601 A.2d 124, 127 (1992) (quoting *Durkin v. State*, 284 Md. 445, 453, 397 A.2d 600, 605 (1979)). *See also* M. Rosenberg, *Judicial Discretion of the Trial Court, Viewed From Above*, 22 SYRACUSE L.REV. 635, 663 (1971).

### B. *Admissibility of "In Life" Photographs*

In *Grandison v. State*, 305 Md. 685, 506 A.2d 580, we applied the two-part test for the admissibility of photographic

---

**8.** The tort action for alienation of affections "arose when a person induced a married woman to leave her husband or otherwise interfered with the marital relationship, even though no act of adultery was committed." *Kline v. Ansell*, 287 Md. 585, 590, 414 A.2d 929, 932 (1980). The plaintiff was required to prove that an affirmative act by the defendant caused harm to the marital relationship. PROSSER & KEETON ON THE LAW OF TORTS § 124, at 919 (5th ed. 1984 & 1988 Supp.).

In *Buch*, the photograph of the plaintiff's wife did not merely duplicate evidence presented in the wife's testimony, nor was it offered to prove an uncontested or stipulated element of the case. The photograph simply did not serve to prove *any* element of the case.

evidence to "in life" photographs. *Id.* at 729–30, 506 A.2d at 602. The defendant, Anthony Grandison, contracted to have David and Cheryl Piechowicz murdered to prevent them from testifying against him in a pending narcotics proceeding. *Id.* at 697, 506 A.2d at 585–86. Rather than killing the two intended victims, however, the assailant mistakenly killed Cheryl Piechowicz's sister, Susan Kennedy. *Id.*, 506 A.2d at 586. We determined that the "in life" photograph of Susan Kennedy was relevant to the issue of her resemblance to her sister. *Id.* at 729, 506 A.2d at 602. We upheld the admission of the photograph, concluding that there was "no arbitrariness" in the trial court's decision. *Id.*, 506 A.2d at 602. The Fourth Circuit later considered the same issue in *United States v. Grandison*, 780 F.2d 425 (4th Cir.1985), *cert. denied*, 495 U.S. 934, 110 S.Ct. 2178, 109 L.Ed.2d 507 (1990). With regard to the relevance of the "in life" photographs, the court stated:

> Objections [to the "in life" photographs] were lodged on grounds of non-relevance. . . . [W]e perceive no strength in the argument, because [the victims] were central figures in the crimes that had been charged. They had to be identified.

*Id.* at 429.

The majority of appellate courts in other jurisdictions that have considered the admissibility of "in life" photographs have also upheld their admission. Annot., *Homicide: Identification of Victim*, 86 A.L.R.2d 722, 739 (1962). *See also Drane v. State*, 265 Ga. 255, 455 S.E.2d 27 (1995); *State v. Ash*, 526 N.W.2d 473 (N.D. 1995); *State v. Brett*, 126 Wash.2d 136, 892 P.2d 29 (1995); *State v. Mergenthaler*, 263 Mont. 198, 868 P.2d 560 (1994); *State v. Walker*, 252 Kan. 279, 845 P.2d 1 (1993); *State v. Williams*, 313 Or. 19, 828 P.2d 1006 (1992), *cert. denied*, 506 U.S. 858, 113 S.Ct. 171, 121 L.Ed.2d 118 (1992); *State v. Bertram*, 591 A.2d 14 (R.I.1991); *State v. Ryan*, 226 Neb. 59, 409 N.W.2d 579 (1987); *Com. v. Nadworny*, 396 Mass. 342, 486 N.E.2d 675 (1985); *State v. Aswegan*, 331 N.W.2d 93 (Iowa 1983); *State v. Brown*, 306 N.C. 151, 293 S.E.2d 569 (1982), *cert. denied*, 459 U.S. 1080, 103 S.Ct. 503, 74 L.Ed.2d 642 (1982); *Burgess v. State*, 339 So.2d 121 (Ala.

1976); *People v. Sullivan*, 97 Mich.App. 488, 296 N.W.2d 81 (1980), *cert. denied*, 308 N.W.2d 109 (1981). A number of these jurisdictions have adopted a two-pronged test for admissibility of "in life" photographs similar to our own standard. *See, e.g., People v. Stevens*, 76 N.Y.2d 833, 560 N.Y.S.2d 119, 120, 559 N.E.2d 1278, 1279 (1990); *People v. Hendricks*, 43 Cal.3d 584, 238 Cal.Rptr. 66, 71–72, 737 P.2d 1350, 1356 (1987).

A minority of jurisdictions have taken the position that "in life" photographs are irrelevant and prejudicial, and therefore have concluded that use of "in life" photographs is disfavored. *See, e.g., Com. v. Rivers*, 537 Pa. 394, 644 A.2d 710, 716 (1994); *Valdez v. State*, 900 P.2d 363, 381 & n. 83 (Okl.Crim.App.1995). A few courts have articulated a higher standard for admission of photographic evidence; for example, Pennsylvania courts have suggested that if photographs are inflammatory, they must possess "essential evidentiary value" to be admissible. *Com. v. McCutchen*, 274 Pa.Super. 96, 417 A.2d 1270, 1272 (1979), *vacated on other grounds*, 499 Pa. 597, 454 A.2d 547 (1982) ("essential evidentiary value" standard upheld, but photographs excluded by trial court found to possess essential evidentiary value, although graphic). The rationale for this elevated standard with respect to photographs is that because they often merely repeat or restate evidence that has been presented in other forms, they do not justify any additional prejudice to the defendant. *See Rivers*, 644 A.2d at 717. We have previously rejected this reasoning and have declined to apply an elevated standard of admissibility to photographic evidence. *Bedford*, 317 Md. at 677, 566 A.2d at 120 ("Bedford alleges that where a photograph has only minimal significance, and no essential evidentiary value, the trial judge should be more inclined to exclude it if it is inflammatory. Nonetheless, we have not adopted such a test and require only that the trial judge not abuse his discretion.").

We have found no jurisdiction, however, that has adopted a per se rule barring the use of "in life" photographs. When appellate courts have disapproved the admission of "in life" photographs, they have generally either found that the photographs were irrelevant, or that their probative value in the

particular case was outweighed by their prejudicial effect. *See, e.g., Rivers,* 644 A.2d at 716; *Parker v. State,* 292 Ark. 421, 731 S.W.2d 756, 763 (1987); *Stevens,* 560 N.Y.S.2d at 120, 559 N.E.2d at 1279; *Boutwell v. State,* 659 P.2d 322, 326 (Okl.Crim.App.1983). Furthermore, even those jurisdictions that have consistently criticized the use of "in life" photographs have upheld admission of the photographs where they were clearly relevant. *See, e.g., Shelton v. State,* 793 P.2d 866, 870 (Okl.Crim.App.1990). For example, although the Oklahoma courts have often expressed disapproval of "in life" photographs, *see, e.g., Rawlings v. State,* 740 P.2d 153, 162 (Okl.Crim.App.1987), the Oklahoma Court of Criminal Appeals upheld the admission of an "in life" photograph of a murder victim despite the defendant's offer to stipulate to identity based on the victim's dental X-rays. *Shelton v. State,* 793 P.2d at 870. The court upheld the admission because the photograph was necessary to support other testimony by people who had observed the victim with the attacker before the incident. *Id.* In addition, even where courts have disapproved the use of "in life" photographs, errors in admission have seldom been found prejudicial. *See, e.g., Valdez,* 900 P.2d at 381; *Rivers,* 644 A.2d at 716; *People v. Cox,* 53 Cal.3d 618, 280 Cal.Rptr. 692, 716, 809 P.2d 351, 375 (1991), *cert. denied,* 502 U.S. 1062, 112 S.Ct. 945, 117 L.Ed.2d 114 (1992); *Stevens,* 560 N.Y.S.2d at 121, 559 N.E.2d at 1280.

## C. *Effect of Stipulations*

 We must next consider the relevance of the "in life" photographs in this case in light of Respondent's contention that the parties stipulated to the identity of the victim. By definition, a stipulation is an agreement between counsel akin to a contract. *See Burke v. Burke,* 204 Md. 637, 645, 106 A.2d 59, 63 (1954). Like contracts, stipulations are based on mutual assent and interpreted to effectuate the intent of the parties.[9] *Id.,* 106 A.2d at 63. Parties are generally held

---

9. In some circumstances, if one party asserts that there is a stipulation and the other party fails to object, this silence may be interpreted as

bound by their stipulations. *Bloom v. Graff,* 191 Md. 733, 736, 63 A.2d 313, 315 (1949). Although a stipulation by definition must be based on mutual assent, parties frequently dispute both the scope of the stipulation and the extent to which it precludes the parties from offering other evidence of the stipulated fact.[10] As Wigmore observed:

> A fact that is judicially admitted [stipulated] *needs* no evidence from the party benefiting by the admission. But his evidence, if he chooses to offer it, *may* even be *excluded*; first, because it is now ... immaterial to the issues ...; next, because it may be superfluous and merely cumber the trial ...; and furthermore, because the added dramatic force which may sometimes be gained from the examination of a witness to the fact (a force, indeed, which the admission is often designed especially to obviate) is not a thing which the party can be said to be always entitled to.

> Nevertheless, a colorless admission by the opponent may sometimes have the effect of depriving the party of the legitimate *moral force of his evidence*; furthermore, a judicial admission may be cleverly made with grudging limitations or evasions or insinuations (especially in criminal cases) so as to be technically but not practically a waiver of proof.

---

acquiescence. *See Henderson v. Warden,* 237 Md. 519, 522, 206 A.2d 793, 795 (1965); *Bloom v. Graff,* 191 Md. 733, 736, 63 A.2d 313, 315 (1949).

**10.** As one commentator notes, "[s]ometimes a stipulation may appear to eliminate an element without actually doing so," because

stipulations ... often ... are worded poorly, especially when offered in the heat of argument. It will not always be clear to a trial judge exactly what the defendant is conceding and what is being disputed.

 \* \* \* \* \* \*

In the midst of arguments over admission [of evidence] ..., a trial judge must parse a stipulation on the spot and decide whether it is fair to both sides. This is not always easy to do, especially if the defendant's theory of defense is ambiguous.

S. Saltzburg, *Stipulations by the Defense to Remove Other Acts Evidence,* 9 Crim. Just. 35, 39 (1995).

9 WIGMORE ON EVIDENCE § 2591, at 824–25 (Chadbourn rev. 1981 & 1990 Supp.) (citations omitted).

In determining whether to admit evidence that is offered to prove a stipulated fact, courts must often balance the competing interests of the parties. *State v. Gilmore*, 332 So.2d 789, 795–96 (La.1976). The party who offers to stipulate is entitled to obtain the benefit of his bargain, i.e., preventing the use of inflammatory evidence. *Id.* The party benefiting from the stipulation, however, may also be entitled to the "legitimate moral force of his evidence." WIGMORE, *supra*, § 2591, at 824.

We believe, as Wigmore suggests, that because of these competing considerations, "there should be no absolute rule on the subject ... [and] the trial court's discretion should determine whether a particular admission is so plenary as to render the first party's evidence wholly needless under the circumstances." *Id.* at 825, *cited in Gilmore*, 332 So.2d at 795. *See also Burgess v. State*, 339 So.2d 121, 123–24 (Ala.Crim. App.1976); Annot., *Criminal Trial—Proving Conceded Fact*, 91 A.L.R. 1478 (1934). We therefore conclude that the trial judge should retain the discretion to determine whether evidence may be admitted to prove a stipulated fact. In exercising this discretion to determine whether extrinsic proof of a stipulated fact is admissible, trial courts should consider, *inter alia:*

(1) the intent of the parties, if any, regarding presentation of the proffered evidence;

(2) the incremental probative value of the evidence as compared to the stipulation, (i.e., where the evidence provides greater detail than the stipulation); and

(3) the potential unfair prejudicial impact of the proffered evidence.

We shall review the trial court's decision in this regard for abuse of discretion.

IV.

A. *Probative Value Versus Prejudicial Effect*

Applying the two-pronged test for the admission of photographic evidence to the "in life" photographs in this case, we conclude that the trial court did not abuse its discretion in admitting the photographs. In every homicide case, the State must establish the identity of the person killed. *Jones v. State,* 188 Md. 263, 272, 52 A.2d 484, 488 (1947) ("In a homicide case the proof . . . [must] establish . . . the fact that the person for whose death the prosecution was instituted is dead. . . ."). Either "in life" photographs or photographs taken after death may be used to establish the victim's identity. *Cf. Grandison,* 305 Md. at 729, 506 A.2d at 602 (upholding admission of "in life" photographs of victims as well as autopsy photographs to illustrate medical examiner's testimony). The photographs of Thomas Blank, Jr., taken while he was alive were probative of the deceased victim's identity because his father's testimony connected the person depicted in the "in life" photographs to the person killed in the accident.

Furthermore, although the photographs were prejudicial to Respondent's case, they were not *unfairly* prejudicial. The "in life" photographs were not used as part of a "before and after" comparison with autopsy photographs, a practice that some courts have suggested may exacerbate the prejudicial effect. *See, e.g., People v. Stevens,* 76 N.Y.2d 833, 560 N.Y.S.2d 119, 120, 559 N.E.2d 1278, 1279 (1990). In addition, neither of the photographs was more prejudicial than autopsy photographs that are routinely admitted in homicide cases. *Accord Sample v. Campbell,* 305 P.2d 1033 (Okl.1957) (In a wrongful death action, potential prejudice resulting from admission of a photograph of the victim, a young boy, in his sports team uniform, did not require reversal). Thus, the trial court decision that the potential prejudicial effect of the photographs did not outweigh their probative value was not an abuse of discretion.

B. *Relevance of the Photographs in Light of a Stipulation*

 Respondent also argues that the photographs pre-
sented in this case were not relevant because the defense
stipulated to the identity of the victim. Applying the princi-
ples regarding stipulations outlined in Section III.C, *supra,* we
must next consider whether Petitioner and Respondent en-
tered into a stipulation.

We are faced with conflicting information regarding the
nature and extent of the stipulation. Before the trial began,
at the conclusion of a bench conference, Respondent's counsel
remarked to the judge that the parties had stipulated to the
identity of the victim, and thus no photographs would be
necessary.[11] Although the State's Attorney did not object, the
record does not establish whether he was still a party to the
bench discussion.[12] The record also indicates, however, that
later in the trial, Petitioner and Respondent disagreed regard-
ing the nature of the stipulation.[13] At the hearing on Respon-

---

11. Respondent's counsel referred to an earlier discussion of the stipula-
tion with the trial judge in chambers. There is no record of this
discussion.

12. When the photographs were first used by the State during opening
arguments, Respondent's counsel objected, but not on the basis of the
stipulation to identify. *See supra* note 1.

13. The dispute regarding the stipulation first arose during the State's
Attorney's direct examination of the victim's father:
 Q: I show you what's been marked State's Exhibits, as well as
 defense exhibits, Number 1 and 2 for identification [the "in life"
 photographs]. Can you tell the jury and the Judge if you recognize
 those? What are those, sir?
 [DEFENSE COUNSEL]: Your Honor, we've already stipulated to the
 identity to avoid what's happening now, Your Honor. I object.
 [THE COURT]: You can just ask him a leading question, I think, that
 it is who it is.
 [STATE'S ATTORNEY]: He did say it's his son, Your Honor, in case
 you didn't hear.
 [THE COURT]: Right. You stipulate to that, [Defense Counsel]?
 [DEFENSE COUNSEL]: We already did, Your Honor, and I'll renew
 my motion that I made at the beginning of the case at this time.
 [THE COURT]: All right. I understand, yes.
 [STATE'S ATTORNEY]: That's not what he stipulated to, Your Hon-
 or, for the record.

dent's motion for a new trial, Respondent's counsel again referred to a stipulation. Finally, at oral argument, Respondent contended that both parties agreed to stipulate to the victim's identity, while the State contended that there was no mutual assent to a stipulation.

■ This case illustrates the need to state the precise terms of a stipulation on the record. We are limited in our review to the information that appears in the record. In future cases, the proponent of a stipulation would be well advised to ensure that the terms of any stipulation are recorded, and that mutual assent is demonstrated. *See McLaurin v. State*, 31 Md.App. 375, 356 A.2d 563 (1976).

[THE COURT]: All right, objection's overruled.

The dispute arose again during the State's direct examination of the emergency room physician, Dr. Frasier, who treated the victim following the accident and signed the victim's death certificate. The State's Attorney offered to use the "in life" photographs of the victim to demonstrate that the person Dr. Frasier pronounced dead was the victim, Thomas Blank:

[STATE'S ATTORNEY]: I don't want [Defense Counsel] thinking he's identified the wrong person. I have photographs of the deceased. I'm more than happy to show it. If he wants to stipulate it's the same person, that's fine.

[DEFENSE COUNSEL]: I've already done that.

[STATE'S ATTORNEY]: No, you did it to the father, not to the doctor.

[DEFENSE COUNSEL]: Judge–

[THE COURT]: What do you want to do?

[DEFENSE COUNSEL]: I want to address the Court, because that's the proper thing to do. I stipulated to the identity of the victim. The subject who is deceased is the one who was involved in the accident. I have stipulated to the identity. He wants to show photographs.

[STATE'S ATTORNEY]: No, I don't. I want to make sure you're [not] going to then say that the person that Dr. Roberts and Dr. Frasier declared dead, I didn't show that person that was stipulated to back at the scene of the crime.

[DEFENSE COUNSEL]: I've already stipulated that's the same person.

[STATE'S ATTORNEY]: Okay, fine. That's fine. That's fine.

[THE COURT]: Okay.

[STATE'S ATTORNEY]: I just want to make sure it's clear ... (inaudible).

[DEFENSE COUNSEL]: It's only the identity that I'm stipulating to.

[THE COURT]: All right, the stipulation is noted.

Assuming, *arguendo*, that the parties did agree to stipulate to the victim's identity, the record illustrates that they consistently disagreed about which evidence was precluded by the stipulation. *See supra* note 13. As we noted in Section III.C, *supra*, the decision regarding whether a particular piece of evidence may be offered to prove a stipulated fact is committed to the sound discretion of the trial judge.

■ Although the record does not reflect any direct statement by the trial judge whether the stipulation to the identity of Thomas Blank, Jr., rendered the "in life" photographs unnecessary, the judge considered the issue on at least four occasions. While the better practice is for the trial judge to state the basis for the decision on the record, the trial court is not required to do so.[14] *Beales v. State*, 329 Md. 263, 270, 619 A.2d 105, 109 (1993). The trial judge was privy to a discussion of the terms of the stipulation in chambers that is not included in the record. He was therefore in a better position to determine whether the "in life" photographs were relevant.

---

14. Respondent's counsel argued the issue of the admissibility of the "in life" photographs again at the hearing on his motion for a new trial. The trial court denied the motion, stating:

> I've looked through the exhibits this morning and viewed the pictures again. He [Thomas Blank, Jr.] appeared to be an attractive and normal 11-year old child at the time, and as far as the pictures are concerned... the testimony, even absent the pictures, the testimony was already in at that time, unchallenged by the defense, that the blood alcohol level was ... a .17. ....

Although the trial judge did not explicitly state that he was balancing probative value against prejudicial effect, this statement reflects the judge's consideration of the potential unfair prejudicial impact of the photographs on the jury.

When photographs are offered as proof of a stipulated fact, the trial judge applies the balancing of probative value against prejudicial effect *twice*. First, the trial judge must balance probative value against prejudicial effect as part of the two-part test for admissibility of photographic evidence. *See supra* Section III.A. Second, the probative/prejudice balance is one factor to consider in determining whether to admit evidence of a stipulated fact. *See supra* Section III.C.

Although the trial judge in this case did not state on the record that he was applying the probative/prejudice balancing test twice, the statement above reflects that he conducted the required balancing. Furthermore, we presume the trial judge applied the law correctly. *I.W. Berman Prop. v. Porter Bros.*, 276 Md. 1, 20, 344 A.2d 65, 76 (1975).

In addition, although the relevance of the photographs derived from their use to prove the victim's identity, which was stipulated, the stipulation did not deprive the photographs of all relevance. *See Grandison v. State,* 305 Md. at 729, 506 A.2d at 602. Photographs are inherently cumulative, whether used to illustrate testimony or, as in this case, in support of a stipulation. We reaffirm the position we stated in *Bedford,* that photographs need not possess "essential evidentiary value" to be admissible. 317 Md. at 677, 566 A.2d at 120. Furthermore, photographic evidence ordinarily does not provide the factfinder with new information, but rather with an alternative form of information. *See Johnson v. State,* 303 Md. at 504, 495 A.2d at 9. The trial judge had discretion to determine whether this alternative form of information regarding the identity of the victim was "wholly needless under the circumstances." WIGMORE, *supra,* § 2591, at 825. We hold that the trial judge's decision to admit the photographs was not an abuse of discretion.

### C. *The Victim's Right to Be Present at Trial Under the Victims' Bill of Rights*

Finally, although we conclude that the "in life" photographs were admissible in this case, we decline to adopt a per se rule that "in life" photographs are admissible in every case. Petitioner and Amici [15] suggest that Article 47 of the Maryland Declaration of Rights and § 761 of Article 27 require the automatic admission of "in life" photographs in order to effectuate the policy of representing the interests of victims in criminal proceedings. *See supra* note 3. Both Article 47 and § 761 were intended to ensure the utmost respect and consideration for the victims of crimes. *See also Cianos v. State,* 338 Md. 406, 421–413, 659 A.2d 291, 294–95 (1995). We do not, however, interpret these broad provisions to preclude the trial

---

**15.** An *amicus curiae* brief was filed on behalf of the Stephanie Roper Foundation, Mothers Against Drunk Driving (MADD), the National Victim Center, and the Maryland Coalition Against Crime.

**566**

judge from exercising discretion regarding the admission of photographic evidence.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH DIRECTIONS TO AFFIRM THE JUDGMENT OF THE CIRCUIT COURT FOR FREDERICK COUNTY. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY RESPONDENT.*

Dissenting Opinion by ELDRIDGE, J., in which MURPHY, C.J., and BELL, J., join.

ELDRIDGE, Judge, dissenting:

The majority's opinion holds that "[t]he photographs of Thomas Blank, Jr., taken while he was alive were probative of the deceased victim's identity," that "[t]he trial judge had discretion to determine whether this alternative form of information regarding the identity of the victim was 'wholly needless under the circumstances,'" and that the trial judge's decision in this regard "was not an abuse of discretion." (Opinion at 561, 565).

The above-quoted holding by the majority decides an issue which was not raised in a certiorari petition, in a cross-petition, or in any order of this Court. Therefore, under Maryland Rule 8–131(b) and numerous decisions by this Court, the issue is not before us.[1] Moreover, the majority

---

1. Maryland Rule 8–131(b) provides as follows:

 "**(b) In Court of Appeals–Additional Limitations.–**

 "(1) *Prior Appellate Decision.*–Unless otherwise provide by the order granting the writ of certiorari, in reviewing a decision rendered by the Court of Special Appeals or by a circuit court acting in an appellate capacity, the Court of Appeals ordinarily will consider only an issue that has been raised in the petition for certiorari or any cross-petition and that has been preserved for review by the Court of Appeals. Whenever an issue raised in a petition for certiorari or a cross-petition involves, either expressly or implicitly, the assertion that the trial court committed error, the Court of Appeals may consider whether the error was harmless or non-prejudicial even though the matter of harm or prejudice was not raised in the petition or in a cross-petition.

fails to resolve the sole issue presented in the State's petition for a writ of certiorari. Because the majority's decision flatly violates a long established and consistently applied limitation upon this Court's exercise of its certiorari jurisdiction, I dissent.

The Court of Special Appeals held in this case, *inter alia*, that, although "[p]ictures of a homicide victim taken before his or her death will sometimes be relevant to the issue of identity," the pictures here were not admissible on this basis because "the parties stipulated to the victim's identity prior to trial." (*Broberg v. State*, Court of Special Appeals No. 458, Sept. Term 1994, slip opinion at 6).

The State's petition in this Court for a writ of certiorari did not in any way challenge this holding by the Court of Special Appeals. The State in its certiorari petition did not argue or even intimate that the trial judge had discretion to admit the photographs on the theory that they were relevant to identity. In fact, the State's petition did not even mention the word "identity" in either the "Question Presented" or the portion of the petition entitled "Reasons For Granting the Writ." [2]

The issue concerning the admissibility of the photographs which the State raised in its certiorari petition was whether they were admissible, in the discretion of the trial judge, to "allow[ ] the jury to become acquainted with the homicide victim through a display of 'in life' photographs of the victim." (Petition For Writ of Certiorari, Question Presented, at 1). The State's arguments for admissibility set forth in the certiorari petition were that the "homicide victim may be 'humanized' during the trial stage through the use of 'in life' photo-

"(2) *No Prior Appellate Decision.*–Except as otherwise provided in Rule 8–304(c), when the Court of Appeals issues a writ of certiorari to review a case pending in the Court of Special Appeals before a decision has been rendered by that Court, the Court of Appeals will consider those issue that would have been cognizable by the Court of Special Appeals."

**2.** The word "identity" appears only once in the State's certiorari petition, in the "Statement Of Facts," where the State simply sets forth some of the Court of Special Appeals' holdings in the case.

graphs," and the "jury is acquainted with the defendant by virtue of being in the courtroom, but the victim is a 'faceless stranger,'" that the "State should be allowed to offer a 'glimpse of the life [which the defendant] chose to extinguish,'"[3] and that, "in the non-homicide context, the jury is introduced to the victim because often times, the victim testifies. Such is not the case with a homicide victim." (*Id.* at 3–4). The State specifically relied on the Maryland statutes and the constitutional provision relating to victim impact evidence and "the importance of fair treatment and representation of a victim during a criminal trial." (*Id.* at 4). The State characterized the issue which it was presenting as "a novel issue."

This Court, believing that the State had presented an issue of public importance, granted the State's petition. There was no cross-petition in this case. Furthermore, our order granting the certiorari petition did not add an issue or change the issue presented by the State. Today, however, the majority does not resolve the important question which prompted the Court to take the case. Instead, the majority reaches an issue not raised in certiorari petition; it overturns a holding by the Court of Special Appeals which was not challenged in this Court.[4]

---

**3.** Quoting from *Mills v. Maryland*, 486 U.S. 367, 397, 108 S.Ct. 1860, 1876, 100 L.Ed.2d 384, 408 (1988) (Rehnquist, C.J., dissenting).

**4.** In addition, the majority's approach is not very even handed. While the majority decides favorably for the State an issue not presented in a certiorari petition or cross-petition, the majority expressly refuses to reach an issue noted by the defendant, namely that the photographs "were never offered into evidence and never received into evidence." (Respondent's brief at 3). The majority justifies its position on the ground that the defendant did "not cross-appeal the denial of his motion" and did not brief or argue the issue before this Court. (Opinion at 549 n. 1).

Of course, the defendant did not have to "cross-appeal" the denial of his motion. His notice of appeal from the trial court's final judgment brought up for appeal all prior rulings by the trial court in the case. Rule 8–131(d); *B & K Rentals v. Universal Leaf*, 319 Md. 127, 132–133, 571 A.2d 1213, 1216 (1990), and cases there cited. Although the defendant did not file a cross-petition for certiorari and did not argue the matter in his brief beyond noting the issue as quoted above, the State neither raised nor "noted" the identity issue in its certiorari

The majority asserts that the question of whether the photographs were admissible on the ground that they were relevant to identity was raised in the State's certiorari petition because the State "also argued" in the petition that the photographs "were relevant and because their probative value was not outweighed by the potential prejudicial effect." (Opinion at 550–551, n. 2). The State's reference to "relevant" in its certiorari petition had nothing to do with "identity." Rather, as previously explained, the State argued that the photographs were relevant so as to allow the jury to become better acquainted with the victim. The weighing of probative value against the likelihood of unfair prejudicial effect is a consideration with regard to almost all evidence issues. See 1 Wigmore, *Evidence,* § 10a, at 674 (1983); McLain, *Maryland Evidence,* § 403.1, at 297 (1987). Once it is determined that evidence is admissible under some principle of evidence law, ordinarily a trial judge has the discretion to exclude it if the judge determines that the probative value is outweighed by the unfair prejudicial effect. The State's argument in its certiorari petition was that the relevancy and probative value of the evidence to "humanize" and acquaint the jury with the homicide victim was not outweighed by an unfair prejudicial effect.

Under the majority's reasoning, whenever a petitioner uses the words "relevancy" and "prejudicial effect," the petitioner has thereby raised virtually any issue that might exist in the entire field of the law of evidence. The issue of whether the photographs were admissible because they were relevant to the element of identity in the homicide offense, and the issue of whether the photographs were admissible because they allowed the jury to become acquainted with the homicide victim in the same way that the jury is acquainted with a

petition, and did not argue in its opening brief that the photographs were admissible on the ground that they were relevant to identity.

I am not suggesting that the Court should address the issue noted by the defendant. Instead, the Court should treat the State and defendant alike and, with respect to both, should not decide issues which are not properly raised in this Court.

victim in a non-homicide case, are clearly separate and distinct issues. The State's certiorari petition raised only the latter issue; the majority decides only the former issue.

For more than twenty years, since the time when this Court's jurisdiction became largely dependent upon the issuance of a writ of certiorari, we have consistently held that, in a case decided by an intermediate appellate court, we shall not consider an issue unless it was raised in a certiorari petition, a cross-petition, or the order by this Court granting certiorari.[5]

Recently, in *Am. Motorists Ins. Co. v. ARTRA Group, Inc.*, 338 Md. 560, 568–569, 659 A.2d 1295, 1299 (1995), with regard to an issue not raised in a certiorari petition or cross-petition, Judge Chasanow for the Court flatly stated: "That issue is therefore not properly before us . . . ." *See also, e.g., McElroy v. State*, 329 Md. 136, 146, 617 A.2d 1068, 1073 (1993) ("McElroy's first argument was not made . . . in his petition for certiorari addressed to this Court. Consequently, the issue is not before us"); *Batson v. Shiflett*, 325 Md. 684, 700–701, 602 A.2d 1191, 1199–1200 (1992); *Ungar v. Handelsman*, 325 Md. 135, 147, 599 A.2d 1159, 1164–1165 (1992); *Stinnett v. Cort Furniture*, 315 Md. 448, 452 n. 2, 554 A.2d 1226, 1227 n. 2 (1989); *Wagner v. Doehring*, 315 Md. 97, 103 n.4, 553 A.2d 684, 687 n.4 (1989); *Neal v. Fisher*, 312 Md. 685, 690–691 n.5, 541 A.2d 1314, 1317 n.5 (1988); *Maus v. State*, 311 Md. 85, 106, 532 A.2d 1066, 1077 (1987); *Allgood v. State*, 309 Md. 58, 82, 522 A.2d 917, 929 (1987); *Clark v. State*, 306 Md. 483, 491–492, 510 A.2d 243, 247 (1986), *cert. denied*, 479 U.S. 1084, 107 S.Ct. 1286, 94 L.Ed.2d 144 (1987); *Fred W. Allnutt, Inc. v. Comm'r Lab. & Ind.*, 289 Md. 35, 39 n. 2, 421 A.2d 1360, 1362 n. 2 (1980); *McMorris v. State*, 277 Md. 62, 70–71 n. 4, 355

---

5. This last category would include an issue added by a subsequent order of this Court, having the effect of amending the order granting certiorari. Whenever an issue has been added by an order of the Court issued after briefing and argument, the parties have been given the opportunity to submit supplemental briefs and/or supplemental oral argument. *See, e.g., Schochet v. State*, 320 Md. 714, 717, 725, 580 A.2d 176, 177, 181 (1990).

A.2d 438, 443 n. 4 (1976); *Walston v. Sun Cab Co.*, 267 Md. 559, 569, 298 A.2d 391, 397 (1973).[6]

The general principle set forth in the above-cited cases has repeatedly been applied in circumstances like those here. Where, as in this case, a particular holding by the Court of Special Appeals was not challenged in a certiorari petition or cross-petition, we have refused to review that holding. As Judge Orth stated for the Court in *Gonzales v. State*, 322 Md. 62, 69, 585 A.2d 222, 226 (1991),

> "Gonzales was obviously persuaded by the reasoning of the Court of Special Appeals. He did not challenge his holding. The [issue] was not raised in his petition for a writ of certiorari, nor was it presented in our order granting the writ. Consequently, the issue is not before us . . . ."

*See, e.g., Middle States v. Thomas*, 340 Md. 699, 702, 668 A.2d 5, 6–7 (1995) ("these rulings by the Court of Special Appeals have not been challenged in this Court and are not before us"); *Murphy v. Edmonds*, 325 Md. 342, 375, 601 A.2d 102, 118 (1992).

Moreover, in criminal cases decided by the Court of Special Appeals, where an issue has been put forth as an alternative basis for upholding the conviction, this Court has consistently refused to consider that issue if it was not raised in a certiorari petition, a cross-petition, or the order of this Court

---

**6.** Furthermore, even where the parties have fully briefed an issue in this Court, we have refused to consider the issue unless it was presented in a certiorari petition, cross-petition, or order of this Court. *See, e.g., Maryland State Police v. Zeigler*, 330 Md. 540, 562–563, 625 A.2d 914, 925 (1993); *Maus v. State*, 311 Md. 85, 106, 532 A.2d 1066, 1077 (1987); *Wright v. State*, 307 Md. 552, 587, 515 A.2d 1157, 1175 (1986); *Md–Nat'l Cap. P. & P. Comm'n v. Crawford*, 307 Md. 1, 36–37, 511 A.2d 1079, 1097–1098 (1986); *Clark v. Elza*, 286 Md. 208, 219 n. 4, 406 A.2d 922, 928 n. 4 (1979); *Mazor v. State Dep't of Correction*, 279 Md. 355, 370–71 n. 8, 369 A.2d 82, 92 n. 8 (1977).

Although it makes no difference in the application of Rule 8–131(b) in the present case, as previously noted, the State's opening brief in this Court did not argue that the photographs were admissible because they were relevant to identity. Instead, the State in its brief expanded upon the argument in its certiorari petition and also made a harmless error argument.

granting the petition. *See, e.g., Clark v. State,* supra, 306 Md. at 491–492, 510 A.2d at 249 ("In the case before us, however, the State has failed to file a cross-petition [raising the] issue" and "we will not consider it"); *McCray v. State,* 305 Md. 126, 135–137, 501 A.2d 856, 860–861 (1985) (the doctrine that an appellate court will affirm the trial court on any ground adequately shown by the record is not applicable in a case decided by the Court of Special Appeals unless the ground was presented in a certiorari petition, a cross-petition, or the order of this Court granting the petition, and "[i]n this case there was no conditional cross-petition filed [by the State] raising the . . . issue"); *Dean v. State,* 291 Md. 198, 202, 434 A.2d 552, 554 (1981) (the Court refused to consider the State's alternative argument, based on the petitioner's failure to raise an issue at trial, because the State failed to file a cross-petition); *Temoney v. State,* 290 Md. 251, 262 n. 8, 429 A.2d 1018, 1023–1024 n. 8 (1981); *Coleman v. State,* 281 Md. 538, 547, 380 A.2d 49, 55 (1977) ("The State did not, however, file a cross-petition for certiorari raising the [alternative] issue, and we therefore will not consider it"); *Dempsey v. State,* 277 Md. 134, 142–143, 355 A.2d 455, 459–460 (1976) ("If the State believed that we should review the Court of Special Appeals' invocation of the plain error doctrine if we granted Dempsey's petition, the State should have filed a conditional cross-petition for a writ of certiorari"). *See also State v. Lancaster,* 332 Md. 385, 402 n. 12, 631 A.2d 453, 462 n. 12 (1993) ("In a case before us which has been decided by the Court of Special Appeals, the principle that a trial court will be affirmed for any reason adequately shown by the record is applicable only if the ground was presented in a petition for a writ of certiorari, in a cross-petition, or in this Court's order granting certiorari"); *Robeson v. State,* 285 Md. 498, 502–503, 403 A.2d 1221, 1223–1224 (1979), cert. denied, 444 U.S. 1021, 100 S.Ct. 680, 62 L.Ed.2d 654 (1980).[7]

---

7. There is one exception to this principle expressly contained in an amendment to Rule 8–131(b), namely the issue of harmless error. Prior to the amendment of the rule setting forth this exception, however, this Court refused to consider the issue of harmless error unless it

Rule 8–131(b) does state that this Court "ordinarily" will consider only an issue raised in a certiorari petition, a cross-petition, or an order of this Court. The word "ordinarily" does indicate that there are exceptions. Nevertheless, neither the use of the word "ordinarily" in Rule 8–131(b) nor the principle embodied in the rule,[8] has been treated as granting a general discretion to reach an issue whenever the Court so desires in the interests of "fairness." [9] If it did, the amendment to Rule 8–131(b), adopting an express exception for the "harmless error" issue, would have been unnecessary. Instead, we have held that the "exceptions" to the principle embodied in Rule 8–131(b) are limited to "extraordinary circumstances." *Mazor v. State Dep't of Correction*, 279 Md. 355, 370–371 n. 8, 369 A.2d 82, 92 n. 8 (1977); *Dempsey v. State, supra*, 277 Md. at 142, 355 A.2d at 459, *Walston v. Sun Cab Co., supra*, 267 Md. at 569, 298 A.2d at 397.

Only a very limited number of circumstances have been treated as "extraordinary" and thus within the exceptions to the requirement that an issue be raised in a certiorari petition, cross-petition, or order by the Court. They include jurisdictional questions,[10] whether the trial court's order was appeal-

---

was raised in a certiorari petition, cross-petition, or order of this Court. *See Clark v. State*, 306 Md. 483, 492, 510 A.2d 243, 247 (1986), *cert. denied*, 479 U.S. 1084, 107 S.Ct. 1286, 94 L.Ed.2d 144 (1987); *Coleman v. State*, 281 Md. 538, 547, 380 A.2d 49, 55 (1977).

**8.** The principle that this Court ordinarily will consider only issues raised in a certiorari petition, a cross-petition, or the order granting certiorari, was first set forth in *Walston v. Sun Cab Co.*, 267 Md. 559, 569, 298 A.2d 391, 397 (1973). The principle was expressly set forth in the Maryland Rules by order of this Court on May 5, 1978, effective July 1, 1978.

**9.** In this respect, our exercise of discretion under Rule 8–131(b)(1) to reach an issue not presented is more limited than our exercise of discretion under the general appellate preservation principle embodied in Rule 8–131(a). *Cf. State v. Bell*, 334 Md. 178, 186–191, 638 A.2d 107, 112–114 (1994).

**10.** *See, e.g., Medical Mutual v. Evander*, 331 Md. 301, 306, 628 A.2d 170, 172 (1993); *Albert W. Sisk & Son, Inc. v. Friendship Packers*, 326 Md. 152, 157, 604 A.2d 69, 71 (1992); *Yarema v. Exxon Corp.*, 305 Md.

**574**

able,[11] a non-constitutional issue that will enable the Court to avoid a constitutional question presented,[12] whether the case has become moot,[13] the question whether the trial court has either failed to render a particular type of judgment required in the action (e.g., a declaratory judgment) or has rendered a type of judgment that is beyond the Court's authority,[14] state government sovereign immunity under Maryland law,[15] and where the failure of the Court to consider an issue would result in the violation of an important public policy, such as the requirement that administrative remedies be exhausted.[16]

The issue decided by the majority today, namely whether the photographs were admissible because they were relevant to identity, falls within no recognized exception to the principle that this Court will only consider issues raised in a certiorari petition, cross-petition, or order of the Court. The majority's decision is inconsistent with the basic policy of the statutory provisions authorizing our certiorari jurisdiction. As pointed out by the Court in *Walston v. Sun Cab Co.*, *supra*, 267 Md. at 569, 298 A.2d at 397,

---

219, 231, 503 A.2d 239, 245 (1986); *Biro v. Schombert*, 285 Md. 290, 402 A.2d 71 (1979).

**11.** *See, e.g., Globe American v. Chung*, 322 Md. 713, 716, 589 A.2d 956, 957 (1991).

**12.** *See, e.g., Hillard v. State*, 286 Md. 145, 150 n. 1, 406 A.2d 415, 418 n. 1 (1979); *State v. Raithel*, 285 Md. 478, 482–487, 404 A.2d 264, 266–269 (1979).

**13.** *See, e.g., State v. Parker*, 334 Md. 576, 584–585, 640 A.2d 1104, 1108 (1994); *State v. Peterson*, 315 Md. 73, 79, 553 A.2d 672, 675 (1989).

**14.** *See, e.g., Ashton v. Brown*, 339 Md. 70, 87, 660 A.2d 447, 455 (1995), and cases there cited; *Creamer v. Helferstay*, 294 Md. 107, 113, 448 A.2d 332, 335 (1982).

**15.** *Md.–Nat'l Cap. P. & P. Comm'n v. Crawford*, 307 Md. 1, 10 n. 3, 511 A.2d 1079, 1083–1084 n. 3 (1986).

**16.** *See, e.g., Moats v. City of Hagerstown*, 324 Md. 519, 525, 597 A.2d 972, 974–975 (1991), and cases there cited. *See also State v. Parker*, 334 Md. 576, 596–597, 640 A.2d 1104, 1114 (1994).

"[i]t should also be kept in mind that the statute contemplated that the desirability and public interest involved in granting certiorari are shown to us by petition and the matters presented to us by petition should logically be those considered by us unless we limit those matters for consideration in our order granting certiorari."

The majority's decision cannot be reconciled with our prior cases or with the language of Rule 8–131(b). For this reason, I cannot concur with the opinion or the judgment of the Court.

Chief Judge MURPHY and Judge BELL have authorized me to state that they concur with the views expressed herein.